IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AKRAM K.,<br><br>                Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1]<br><br>                Defendant. | MEMORANDUM DECISION AND ORDER<br><br><br><br>Case No. 2:20-CV-511 TS<br><br>District Judge Ted Stewart |

       This matter comes before the Court on Plaintiff Akram K.'s appeal from the decision of the Social Security Administration denying her application for disability insurance benefits. Having considered the arguments of the parties, reviewed the record and relevant case law, and being otherwise fully informed, the Court will affirm the administrative ruling.

## I. STANDARD OF REVIEW

       This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether his findings are supported by substantial evidence and whether the correct legal standards were applied.[2] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[3] The ALJ is required to

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

[2] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[3] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

consider all of the evidence, although they are not required to discuss all of the evidence.[4] If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.[5] The Court should evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[6] However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the Commissioner.[7]

## II.  BACKGROUND

A.  PROCEDURAL HISTORY

On February 23, 2017, Plaintiff filed an application for disability insurance benefits, alleging disability beginning on January 12, 2016.[8] The claim was denied initially and upon reconsideration.[9] Plaintiff then requested a hearing before an ALJ, which was held on July 16, 2019.[10] The ALJ issued a decision on July 23, 2019, finding that Plaintiff was not disabled.[11] The Appeals Council denied Plaintiff's request for review on June 15, 2020,[12] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[13]

---

[4] *Id.* at 1009–10.

[5] *Richardson*, 402 U.S. at 390.

[6] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[7] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[8] R. at 188–89.

[9] *Id.* at 78, 90.

[10] *Id.* at 37–77.

[11] *Id.* at 18–36.

[12] *Id.* at 1–7.

[13] 20 C.F.R. § 422.210(a).

B. MEDICAL HISTORY

Plaintiff sought disability based on arthritis in her hands and knees, degenerative disc disease, high blood pressure, a left knee MCL tear, and swollen legs.[14]  Plaintiff has a history of seeking treatment for pain in her hands, knees, feet, and back.  Plaintiff took over-the-counter pain medication to help alleviate her pain with limited success.[15]  Various procedures were recommended by Plaintiff's providers, but it does not appear that any of them were performed.[16]

C. HEARING TESTIMONY

At the hearing, the ALJ heard testimony from Plaintiff, Plaintiff's husband, Plaintiff's friend, and a vocational expert.  Plaintiff stated that she currently worked part-time at a department store but was allowed certain accommodations.[17]  Plaintiff testified that she left her previous employment because of the pain in her hands and back.[18]  Plaintiff stated that she would like to work but that she could not because the pain was so bad.[19]

Plaintiff's husband similarly testified that Plaintiff was not capable of work because of her pain.[20]  Plaintiff's friend also observed that Plaintiff was in constant pain and could not work more than three hours at a time.[21]

---

[14] R. at 283.
[15] *Id.* at 383, 530, 594.
[16] *Id.* at 615, 620.
[17] *Id.* at 50–52.
[18] *Id.* at 52–54.
[19] *Id.* at 53.
[20] *Id.* at 65.
[21] *Id.* at 66–69.

D.   THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 31, 2016.[22]  At step two, the ALJ found that Plaintiff suffered from the following severe impairments: obesity; osteoarthritis, bilateral hands; degenerative joint disease, bilateral knees; degenerative disc disease of the lumbar spine; bilateral bunions; and plantar fasciitis.[23]  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment.[24]  The ALJ found that Plaintiff could perform light work with certain limitations.[25]  At step four, the ALJ determined that Plaintiff could perform her past relevant work as a book binder and, therefore, she was not disabled.[26]

## III.  DISCUSSION

Plaintiff argues that the ALJ erred in giving little weight to her treating physician, discounting Plaintiff's subjective complaints of pain, and giving only some weight the opinions of Plaintiff's husband and friend.  Based upon these alleged errors, Plaintiff contends the ALJ's residual functional capacity ("RFC") findings were flawed.

---

[22] *Id.* at 23–24.
[23] *Id.* at 24.
[24] *Id.* at 24–25.
[25] *Id.* at 25–30.
[26] *Id.* at 30–31.

A.    MEDICAL OPINION EVIDENCE

Plaintiff first argues that the ALJ erred in his treatment of the opinions of Larisa Yaroshchuk, M.D., Plaintiff's treating physician. An ALJ must review every medical opinion.[27] In reviewing the opinions of treating sources, the ALJ must engage in a sequential analysis.[28] First, the ALJ must consider whether the opinion is well-supported by medically acceptable clinical and laboratory techniques.[29] If the ALJ finds that the opinion is well-supported, then he must confirm that the opinion is consistent with other substantial evidence in the record.[30] If these conditions are not met, the treating physician's opinion is not entitled to controlling weight.[31]

This does not end the analysis, however. Even if a physician's opinion is not entitled to controlling weight, that opinion must still be evaluated using certain factors.[32] Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[33]

---

[27] 20 C.F.R. § 404.1527(c).

[28] *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.* at 1301 (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)).

After considering these factors, the ALJ must give good reasons for the weight he ultimately assigns the opinion.[34] If the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so.[35]

Dr. Yaroshchuk provided three medical source statements: one for the lumbar spine, one for arthritis, and one for all of Plaintiff's physical conditions.[36] Dr. Yaroshchuk opined that Plaintiff could walk less than a block, sit for 30 minutes at a time and stand for 30 minutes, sit for 2 hours in an 8-hour-day and stand for less than 2 hours, need to take breaks every 2 hours, needed to elevate her legs, would be off-task 5% of the time, and miss more than 4 days per month.

The ALJ gave Dr. Yaroshchuk's little weight. The ALJ found that Dr. Yaroshchuk's opinions were not consistent with her treatment notes, physical examination, and the record as a whole.[37] The ALJ further discounted Dr. Yaroshchuk's opinions regarding Plaintiff's mental limitations because Plaintiff had not been treated for mental health conditions. The ALJ further noted that the evidence did not support a need for Plaintiff to elevate her legs. Finally, the ALJ concluded that longitudinal record supported a finding of light work.

Plaintiff argues that Dr. Yaroshchuk's opinions are consistent with the medical evidence. Plaintiff points to evidence showing that Plaintiff was diagnosed with severe maladies. It is undisputed that Plaintiff suffers from a number of severe conditions that limit her abilities, and

---

[34] *Id.*
[35] *Id.*
[36] R. at 603–14.
[37] *Id.* at 29.

the ALJ found as much when he limited Plaintiff to light work. However, simply because Plaintiff has received these diagnoses, it does not necessarily follow that Dr. Yaroshchuk's extreme functional limitations are supported by the record. While Plaintiff was diagnosed with various conditions, her doctors prescribed conservative treatment measures and Plaintiff did not follow through on other measures suggested by her treatment providers.

Plaintiff also argues that the ALJ erroneously relied on a statement from Dr. Yaroshchuk in October 2015 to support his determination that Plaintiff was not disabled. In that statement, Dr. Yaroshchuk opined that "light duty, sedentary work" was appropriate for Plaintiff. However, the ALJ merely noted this evidence. He did not use it as a basis to give lesser weight to Dr. Yaroshchuk's opinions and it does not appear to have played a role in the disability determination. In sum, the ALJ gave good reasons, supported by substantial evidence, to support his decision to give Dr. Yaroshchuk's little weight.

B.  PLAINTIFF'S SUBJECTIVE COMPLAINTS

Plaintiff testified that she was unable to work because of disability pain. The ALJ found that the limiting effects of Plaintiff's symptoms were not consistent with the record evidence. The ALJ noted that Plaintiff had received minimal and conservative treatment for her impairments and that Plaintiff had not followed-up on other recommendations made by her providers to relieve her pain.[38] Plaintiff argues that the ALJ erred in his consideration of her complaints.

---

[38] *Id.*

The Social Security Administration recently eliminated "the use of the term 'credibility.'"[39] Under SSR 16-3p, the ALJ must first determine whether an individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms.[40] Next, the ALJ evaluates the intensity and persistence of an individual's symptoms to determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities.[41] In making this determination, the ALJ examines a number of factors, including:

> (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.[42]

In so doing, the ALJ does not "assess an individual's overall character or truthfulness."[43] Instead, the ALJ is to "focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities."[44]

---

[39] SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017).

[40] *Id.* at *3.

[41] *Id.* at *4.

[42] *Id.* at *7–8.

[43] *Id.* at *11.

[44] *Id.*

Here, the ALJ conducted the proper analysis and focused on two factors—conservative treatment and noncompliance with treatment—as a basis to support his conclusion. These are proper factors for the ALJ to consider.[45]

Plaintiff argues that the ALJ should not have relied on noncompliance with treatment as a basis to support his conclusion regarding Plaintiff's subjective complaints of pain. Plaintiff asserts that other factors, such as an adverse reaction to anesthesia and a lack of funds, are to blame for her lack of interest in surgical treatment. Plaintiff's argument concerning an adverse reaction to anesthesia is not supported by any objective medical evidence. Instead, this statement was made by Plaintiff's counsel at the hearing before the ALJ.[46] Instead, Plaintiff stated that she did not like surgery and was scared about the surgery.[47] Thus, there is insufficient evidence to support the notion that Plaintiff's failure to follow through with recommended treatment was based on a past reaction to anesthesia.

Turning to Plaintiff's financial difficulties, if she was "unable to follow a prescribed regimen of medication and therapy to combat her disabilities because of financial hardship, that hardship may be taken into consideration when determining whether to award benefits."[48] However, there is no evidence that Plaintiff could not pay for any of the prescribed treatment. Plaintiff's husband testified that she had health insurance through the Affordable Care Act and

---

[45] *See Bainbridge v. Colvin*, 618 F. App'x 384, 387 (10th Cir. 2015) (identifying conservative treatment and noncompliance with treatment as factors an ALJ can consider).

[46] R. at 46.

[47] *Id.* at 48.

[48] *Murphy v. Sullivan*, 953 F.2d 383, 386 (8th Cir. 1992); *see also Allen v. Apfel*, 216 F.3d 1086, at *3 (10th Cir. 2000) (unpublished table decision) (citing *Murphy*).

that they paid a relatively modest amount for her insurance and prescriptions.[49] Thus, this argument does not require reversal.[50]

C.      PLAINTIFF'S HUSBAND AND FRIEND

As stated, the ALJ heard evidence from Plaintiff's husband and friend concerning Plaintiff's complaints of pain. The ALJ gave this testimony some weight. The ALJ noted that "[t]he testimony of these witnesses is helpful, but the objective medical evidence is more probative."[51]

Testimony from non-medical sources "may provide information from which we may draw inferences and conclusions about an individual's statements that would be helpful to us in assessing the intensity, persistence, and limiting effects of symptoms."[52] The ALJ is to "consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file."[53]

Here, the ALJ considered the testimony of these witnesses and compared it to the objective medical evidence. Ultimately, the ALJ concluded that the objective medical evidence was more probative than these statements. For substantially the same reasons already discussed, this conclusion is well supported. Therefore, reversal is not required.

---

[49] R. at 62–63.

[50] *See Allen*, 216 F.3d 1086, at *3 (rejecting argument that the ALJ failed to consider whether lack of medical treatment was due to insufficient funds where there was no evidence that plaintiff sought medical treatment "but was refused for an inability to pay").

[51] R. at 30.

[52] SSR 16-3p, 2017 WL 5180304, at *7.

[53] *Id.*; *see also* 20 C.F.R. § 404.1527(f).

D.    RFC

Plaintiff's final argument is that the ALJ's RFC assessment was flawed because of the alleged errors discussed above. Since the ALJ did not err, this argument must be rejected.

IV.  CONCLUSION

Having made a thorough review of the entire record, the Court hereby AFFIRMS the decision below.

DATED this 17th day of August, 2021.

BY THE COURT:

_____
Ted Stewart
United States District Judge